**WRIST–ROCKET MANUFACTURING CO., INC., Appellant-Cross Appellee,**

v.

**SAUNDERS ARCHERY COMPANY, substituted for Charles Saunders d/b/a Saunders Archery Co., Appellee-Cross Appellant.**

Nos. 74–1664, 74–1728.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1975.

Decided May 12, 1975.

Rehearings Denied June 9, 1975.

Certiorari Denied Oct. 6, 1975.

See 96 S.Ct. 134.

William E. Holland, Omaha, Neb., for Saunders Archery Co.

Esther O. Kegan, Kegan, Kegan & Berkman, Chicago, Ill., for Wrist-Rocket Mfg. Co.

Before HEANEY and WEBSTER, Circuit Judges, and NANGLE, District Judge.*

* JOHN F. NANGLE, District Judge, Eastern District of Missouri, sitting by designation.

HEANEY, Circuit Judge.

This appeal involves the right to use the trademark "Wrist Rocket" on wrist-braced slingshots. The mark is registered in the United States Patent Office to the appellant. Suit was brought in the United States District Court for the District of Nebraska by the appellant alleging infringement of its registered mark and breach of fiduciary duty by the appellee. Relief in the form of an injunction and damages was sought. The appellee counterclaimed seeking a declaratory judgment that the exclusive right to use the mark was in it and an injunction against the further use of the mark by the appellant. It also sought damages for unfair competition and deceptive trade practices under the Nebraska Deceptive Trade Practices Act, Neb.R.R.S. § 87–301 et seq., and for false or fraudulent registration of the trademark under 15 U.S.C. § 1120.[1] The trial was to the court. It held that:[2]

1. The appellant's action for trademark infringement and unfair competition had not been sustained by the evidence and must fail;

2. A hearing must be scheduled to determine the damages to which the appellant was entitled for the appellee's breach of fiduciary duty;

3. The appellee is the common law owner of the trademark "Wrist Rocket" as used in the sale of wrist-braced slingshots and replacement rubbers therefor and has the exclusive right to its use.

4. The registration issued to the appellant should be cancelled, and the Commissioner of Patents be directed to issue a registration of the mark "Wrist Rocket" to the appellee upon proper application therefor;

5. The appellant had infringed upon the appellee's trademark by its use of the mark "Wrist Rocket" after January 19, 1972, and that the appellant had en-

gaged in deceptive trade practices and unfair competition by its actions following said date. On the basis of this finding, the court ordered that:

a) The appellant be permanently enjoined from using the corporate name "Wrist Rocket Manufacturing Company, Inc." or any name confusingly similar thereto;

b) The appellant be permanently enjoined from using the mark "Wrist Rocket" in any manner on wrist-braced slingshots or replacement rubbers; and

c) A hearing be held to determine the damages to which the appellee was entitled for the appellant's use of the trademark "Wrist Rocket" sustained after January 19, 1972.

6. A hearing be held to determine the damages sustained by the appellee as a consequence of the false statements contained in the appellant's application for registration of the trademark "Wrist Rocket."

7. The appellee not entitled to attorneys' fees and costs under Nebraska law.

Both parties appeal. The appellant assigns as error the District Court's findings in Items 1, 3, 4, 5(a–c) and 6. The appellee assigns as error the District Court's findings in Items 2 and 7. For the reasons hereinafter stated, we affirm the District Court's findings in Items 1 and 7, we reverse its findings in Items 4 and 5(a–b), we partially reverse its finding in Item 3, and we express no opinion as to the District Court's findings in Items 2, 5(c) and 6.

I.

Initially, we must examine the jurisdictional basis for our review. The parties assume that we can consider the cause pursuant to 28 U.S.C. § 1291, which provides for review by Courts of Appeal from all final decisions of the District Court. Generally, a final deci-

1. 15 U.S.C. § 1120 states:

Any person who shall procure registration in the Patent Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be

liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

2. The decision of the District Court is reported at 379 F.Supp. 902 (D.Neb.1974).

sion ends the litigation and leaves nothing for the court to do but execute the judgment. Gialde v. Time, Inc., 480 F.2d 1295, 1299 (8th Cir. 1973). Here, the litigation is not concluded. As regards the issues of breach of fiduciary duty, unfair competition and deceptive trade practices and false or fraudulent registration, the District Court has determined only the liability; the amount of damages therefor has been reserved for later determination. The order appealed from is interlocutory in nature, and we do not have jurisdiction under 28 U.S.C. § 1291. *See* Smith v. United States, 332 F.2d 731, 732 (8th Cir. 1964); Zwack v. Kraus Bros. & Co., 237 F.2d 255, 261 (2nd Cir. 1956); Fidelity Trust Co. v. Board of Education, 174 F.2d 642, 645 (7th Cir. 1949). Nevertheless, we do have jurisdiction, pursuant to 28 U.S.C. § 1292(a)(1),[3] to examine the merits of that part of the order granting to the appellee a permanent injunction and ordering the cancellation of the appellant's registration. *See* Smith v. Vulcan Iron Works, 165 U.S. 518, 17 S.Ct. 407, 41 L.Ed. 810 (1897); Abercrombie & Fitch Co. v. Hunting World, Inc., 461 F.2d 1040, 1042 (2nd Cir. 1972); Zwack v. Kraus Bros. & Co., *supra* at 261–262.

## II.

The appellant, Wrist-Rocket Manufacturing Company, Inc.,[4] is a Nebraska corporation and successor to Tru-Mark Manufacturing Company, which succeeded the proprietorship of Howard J. Ellenburg. The appellee, Saunders Archery Company, is also a Nebraska corporation and is successor to Saunders Archer-Target Company, a partnership of Charles and Phyllis Saunders, husband and wife. For purposes of clarity, the parties will be referred to as Ellenburg and Saunders, respectively.

Howard Ellenburg is the inventor of a wrist-braced slingshot that he initially marketed, through an Iowa sporting goods distributor, as "Howard's Wrist Locker Slingshot." This initial marketing arrangement was soon terminated by agreement of the parties, and Ellenburg thereafter entered into a distributorship agreement with Saunders, an established distributor of archery related sporting goods. This agreement, reduced to writing in July, 1954, gave Saunders the exclusive right to sell the slingshots manufactured by Ellenburg, with the latter retaining the right to make direct sales to customers, but not to dealers. The agreement was not strictly followed by either party, and it terminated by its own force in 1964. The agreement, nevertheless, did form the basis of the parties' business relationship which continued until November, 1971, when it was terminated by Saunders. After the termination, Ellenburg revived his distributorship agreement with the Iowa company and continued to manufacture "Wrist Rocket" slingshots. Saunders also continued to market similar slingshots under the "Wrist Rocket" label after establishing his own manufacturing facility. This suit followed.

## A.

Before the commencement of this suit, Ellenburg's right to use the trademark "Wrist Rocket" in interstate commerce had become incontestable pursuant to 15 U.S.C. § 1065.[5] This incon-

---

3. *See* Wooten v. First National Bank of St. Paul, Minnesota, 490 F.2d 1275, 1276 (8th Cir. 1974) (per curiam); Abercrombie & Fitch Co. v. Hunting World, Inc., 461 F.2d 1040, 1041 (2nd Cir. 1972); Hook v. Hook & Ackerman, Inc., 233 F.2d 180, 182 (3rd Cir. 1956).

28 U.S.C. § 1292(a)(1) provides in relevant part:

(a) The courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States * * * granting * * * injunctions * * * except where a direct review may be had in the Supreme Court;

4. Pursuant to the order of the District Court, the appellant has changed its corporate name to Trumark Manufacturing Company.

5. The appellant applied for registration on September 14, 1964, and on May 4, 1965, the mark was published pursuant to 15 U.S.C. § 1062. The appellee did not oppose the registration, and the trademark was thereafter reg-

testable status did not, however, aid the appellant in his infringement action against Saunders, and properly so. An incontestable registration does not confer upon the registrant rights not possessed at common law. It is not a sword. To prevail in the infringement action, Ellenburg had to establish his exclusive right to use the trademark independent of the registration. *See* Morehouse Manufacturing Corp. v. J. Strictland And Co., 407 F.2d 881, 888, 56 CCPA 946 (1969); Tillamook County Cream. Ass'n v. Tillamook Cheese & D. Ass'n, 345 F.2d 158, 160 (9th Cir.), cert. denied, 382 U.S. 903, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965); 4 Callmann, Unfair Competition, Trademark, and Monopolies, § 97.3(c)(1) at 599 (3rd Ed. 1970). The burden was upon Ellenburg to prove prior appropriation and use of the trademark in connection with his business. *See* Sweetarts v. Sunline, Inc., 380 F.2d 923, 926 (8th Cir. 1967).

The appellant argues, as he did in the court below, that the business relationship of the parties is dispositive of the issue of exclusive right to use. Ellenburg characterizes the relationship as that of manufacturer and exclusive distributor and contends that all actions of Saunders taken to promote the sales of the slingshot inured to the former's benefit. Saunders rejects this characterization of the business relationship and contends that their agreement was merely a buy-sell arrangement.

The initial written agreement of the parties was silent as regards the ownership of the trademark "Wrist Rocket," for at the time of its formation, that mark had not been created. Both parties then referred to the slingshot as "Howard's Wrist Locker Slingshot." This is not then a case where a distributor appropriates to its own use an existing trademark of the manufacturer.

The issue here is who, as between the manufacturer and distributor, has ownership of a trademark created after the formation of the business relationship. In this context, the relationship of the parties is clearly relevant, but the underlying and dispositive question remains: which party has priority of appropriation and use of the trademark in connection with his business. *See* Atlas Beverage Co. v. Minneapolis Brewing Co., 113 F.2d 672, 674–675 (8th Cir. 1940); 3 Callmann, *supra* § 68.2 at 72–74.

We conclude that the appellee had a common law right to use the trademark, but that the right was not exclusive. We base our holding that Saunders had a common law right of use on the following findings of the District Court, none of which are clearly erroneous:

1. Saunders was the first to use the trademark "Wrist Rocket" on slingshots sold by him. Prior to 1955, when Ellenburg was selling slingshots under the name "Howard's Wrist Locker Slingshots," Saunders affixed tags to the slingshots that carried his house mark "Saunders" along with the trademark "Wrist Rocket."

2. Saunders was the party with whom the public identified the slingshot, and was the party to whom the public looked for satisfaction when the slingshot proved defective.

3. Throughout the business relationship of the parties, with the exception of approximately one year, the name "Saunders" appeared with the trademark "Wrist Rocket" with no mention of the manufacturer, Ellenburg.

4. Most of the technical changes in the manufacture of the slingshot were made at Saunders' direction. Saunders attempted to control the quality and appearance of the slingshots that were being identified with his archery business.

istered to the appellant on July 20, 1965. The appellee claimed that he had no knowledge of the registration until 1971, shortly before the parties business relationship terminated. 15 U.S.C. § 1072 provides that registration of a trademark on the principal register is con-

structive notice of the registrant's claim of ownership.

Neither party contends that the name "Wrist Rocket", as used in the sale of slingshots, is incapable of achieving trademark status.

5. While Ellenburg made sales both directly and by mail, all reorders were directed to Saunders.

The common law right to use the trademark was in the distributor, Saunders.

"The use of a trademark * * * does not necessarily and as a matter of law impart that the articles on which it is used are manufactured by the user. It is enough that they are manufactured for him, that he controls their production, or that they pass through his hands in the course of trade and that he gives to them the benefit of his reputation or of his name and business style."

Electronic Com'ns, Inc. v. Electronic Components For Ind. Co., 443 F.2d 487, 492 (8th Cir.), cert. denied, 404 U.S. 833, 92 S.Ct. 80, 30 L.Ed.2d 63 (1971), quoting from Victor Tool & Machine Corp. v. Sun Control Awnings, Inc., 229 F.Supp. 868, 874 (E.D.Mich.1968), aff'd, 411 F.2d 792 (6th Cir. 1969). *See* Menendez v. Holt, 128 U.S. 514, 520, 9 S.Ct. 143, 32 L.Ed. 526 (1888); Atlas Beverage Co. v. Minneapolis Brewing Co., *supra* at 678.[6]

### B.

The District Court, after holding that the common law right to use the trademark "Wrist Rocket" was in Saunders, ordered the Commissioner of Patents to cancel Ellenburg's registration, and enjoined Ellenburg from further use of the mark. It acted on the basis of Saunders' common law rights and pursuant to 15 U.S.C. § 1065, which states that a registration shall become incontestable after five years of continuous use:

* * * [E]xcept to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of the publication under this chapter of such registered mark * * *.

By so applying 15 U.S.C. § 1065, the District Court rendered meaningless the protection against perpetual attack on a registered trademark that 15 U.S.C. § 1115(b) was meant to provide.[7] This was error.

■ Saunders' common law right to use the trademark cannot destroy the incontestable status of Ellenburg's registration. Section 1065 makes clear that incontestability pursuant to 15 U.S.C. § 1115(b) is not a sword that broadens the rights of the registrant beyond those at common law. Incontestability is, however, a shield that protects the registrant from cancellation of his trademark by a prior user claiming superior rights. Tillamook County Cream. Ass'n v. Tillamook Cheese & D. Ass'n, *supra* at 163 (dictum); John Morrell & Co. v. Reliable Packing Co., 295 F.2d 314, 316 (7th Cir. 1961); Schwinn Bicycle Co. v. Murray Ohio Manufacturing Co., 339 F.Supp. 973, 982 (M.D.Tenn.1971), aff'd per curiam, 470 F.2d 975 (6th Cir. 1972); Haviland & Co. v. Johann Haviland China Corporation, 269 F.Supp. 928, 954, 955 (S.D.N.Y.1967); 4 Callmann, *supra* § 97.-3(c)(1) at 599. *See* Travelodge Corporation v. Siragusa, 228 F.Supp. 238, 242 (N.D.Ala.1964), aff'd per curiam, 352 F.2d 516 (5th Cir. 1965). An incontesta-

---

**6.** The appellant raises for the first time on appeal the issue of abandonment of the trademark by the appellee. Absent unusual circumstances, issues not tried below will not afford the basis for reversal. *See* Motor Carriers Coun. of St. Louis, Inc. v. Local U. No. 600, 486 F.2d 650, 654 (8th Cir. 1973). We perceive no unusual circumstances here.

**7.** 15 U.S.C. § 1115(b) states:

If the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the affidavit filed under the provisions of said section 1065 subject to any conditions or limitations stated therein except when one of the following defenses or defects is established:

(1) That the registration or the incontestable right to use the mark was obtained fraudulently; * * *

Six additional defenses or defects are listed, none of which are relevant here.

ble registration is the exception to the rule that conclusive vested rights are not conferred by registration. 4 Callmann, *supra* § 97.3(a) at 587.

■ Saunders argues, however, another basis for the District Court's power to cancel Ellenburg's registration. He contends that since the registration was procured by false statements, the District Court could right the wrong pursuant to 15 U.S.C. § 1119.[8] The appellee asks us to accord that section a construction that vitiates the specifically enumerated defenses or defects of 15 U.S.C. § 1115(b). That latter section specifically provides that once a registered mark has become incontestable pursuant to 15 U.S.C. § 1065, it shall be conclusive evidence of the registrant's right to use except when "the registration or the incontestable right to use the mark was obtained fraudulently." [9] This specific language limits the power of the District Court pursuant to 15 U.S.C. § 1119.[10] *See* John R. Thompson Co. v. Holloway, 366 F.2d 108, 113 (5th Cir. 1966); Rand McNally & Co. v. Christmas Club, 105 U.S.P.Q. 499, 500–501 (1955), aff'd, 242 F.2d 776, 44 CCPA 861 (1957); 3 Callmann, *supra* § 86.1(b) at 1065. Here, the District

Court found that the statements of the appellant, although false, were not made with the intent to defraud. This finding is not clearly erroneous. The cancellation of Ellenburg's registration was error. *See* Allen Homes, Inc. v. Jack H. Weersing and Elk River Homes, Inc., 510 F.2d 360 (8th Cir. 1975) at 362, petition for cert. filed, 43 U.S.L.W. 3540 (U.S. April 8, 1975) (No. 74–1218); Blue Bell, Inc. v. Jaymar-Ruby, Inc., 497 F.2d 433, 438 n. 13 (2nd Cir. 1974).

### III.

■ The appeal, as disposed, recognizes and gives effect to Ellenburg's statutory rights, none of the defenses or defects of 15 U.S.C. § 1115(b) having been proven, and to Saunders' common law rights, which are not destroyed by the appellant's incontestable registration. Both are entitled to use the trademark "Wrist Rocket" in the sale of wrist-braced slingshots.[11] Since Ellenburg's use of the mark is lawful, the District Court was clearly correct in denying Saunders attorneys' fees and costs in his action for unfair competition and deceptive trade practice.[12]

---

8. 15 U.S.C. § 1119 states:

In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Commissioner, who shall make appropriate entry upon the records of the Patent Office, and shall be controlled thereby.

9. *See* note 7, *supra*.

10. Compare the specific language employed in 15 U.S.C. § 1115(b), *see* note 7, *supra*, with the general language employed in 15 U.S.C. § 1115(a), which provides that a registered mark, not incontestable, shall be accorded prima facie evidentiary weight subject to "any legal or equitable defense or defect which might have been asserted if such mark had not been registered."

11. *See* Alfred Dunhill of London v. Dunhill Tailored Clothes, 293 F.2d 685, 49 CCPA 730 (1961), cert. denied, 369 U.S. 864, 82 S.Ct. 1030, 8 L.Ed.2d 84 (1962); Haviland Co. v.

Johann Haviland China Corporation, 269 F.Supp. 928 (S.D.N.Y.1967).

Saunders' common law right to use the mark extends to those market areas where he had established prior use before the publication of Ellenburg's registration. *See* Mister Donut of America, Inc. v. Mr. Donut, Inc., 418 F.2d 838 (9th Cir. 1969); Sweetarts v. Sunline, Inc., 380 F.2d 923, 928 (8th Cir. 1967); Dawn Donut Company v. Hart's Food Stores, Inc., 267 F.2d 358, 365 (2nd Cir. 1959); 15 U.S.C. §§ 1065 and 1072. If the parties disagree over the limits of Saunders' market, the same shall be determined by the District Court on remand.

12. Neb.R.R.S. § 87–303(b) provides:

Costs shall be allowed to the prevailing party unless the court otherwise directs. The court in its discretion may award attorneys' fees to the prevailing party if (1) the party complaining of a deceptive trade practice has brought an action which he knew to be groundless or (2) the party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive.

■ This concurrent use of the mark, while equitable between the parties, does raise the real possibility of purchaser confusion as to the source of origin of the slingshots bearing the "Wrist Rocket" mark. *See* David Sherman Corporation v. Heublein, Inc., 340 F.2d 377 (8th Cir. 1965). We believe this prospective confusion can be obviated, as a matter of law, by requiring each party to use the trademark only in conjunction with a prefix of equal prominence that identifies the source of origin. On remand, the District Court shall determine that the prefixes chosen by the parties serve this purpose.[13]

The order of the District Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Each party shall bear his own costs.

13. *See* P. Daussa Corp. v. Sutton .Cosmetics (P.R.) Inc., 462 F.2d 134, 136 (2nd Cir. 1972).