**SUNBEAM CORPORATION, Plaintiff,**

v.

**MERIT ENTERPRISES, INC., Defendant.**

**No. 77 Civ. 5851 (KTD).**

United States District Court, S. D. New York.

May 7, 1978.

Pattishall, McAuliffe & Hofstetter, Chicago, Ill., Layton & Sherman, New York City, for plaintiff, by Beverly W. Pattishall, Robert Newbury, Chicago, Ill., Frederick Sherman, New York City, of counsel.

Michael A. Lacher, P. C., New York City, for defendant.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This is a trademark infringement action involving the use of the name "Le Chef" in connection with an appliance called a food processor. Both the plaintiff, Sunbeam Corporation, and the defendant, Merit Enterprises, Inc., claim the right to market their strikingly similar food processors under the "Le Chef" trademark.

Sunbeam initiated this action on December 2, 1977. No answer had been filed by January 9, 1978, and Sunbeam filed and served a notice of default. Merit moved to vacate that default, urging, as grounds therefor the illness of the then attorneys in

charge of the case.[1] Apparently Sunbeam was aware of these illnesses but nonetheless refused an extension of time to answer. Merit has also moved by order to show cause for a preliminary injunction to enjoin Sunbeam's continued production, advertisement and sale of the Sunbeam "Le Chef" food processor.

On February 21, 1978, I vacated the notice of default (over strenuous objection of Sunbeam's counsel) and a hearing was held on the question of the preliminary injunction; post trial memoranda were submitted on April 16, 1978. The following shall constitute my findings of fact and conclusions of law.

In or about 1964, Roto Broil Corporation of America began the manufacture of electric knives bearing the name "Le Chef." Although never registered as a trademark, the "Le Chef" name was continuously applied to the Roto Broil knives until that company ceased their production in 1971. Approximately two years ago, Merit Enterprises took over the operations of Roto Broil. Merit has never manufactured "Le Chef" electric knives; however, it claims that the trademark continues to be valid since Merit services that knife whenever necessary[2] and maintains the tools and dies which could be used to start production should the demand arise. The "Le Chef" name was not applied to any products manufactured by Merit until approximately April 1977, when plans began to assign that name to a hamburger cooker, theretofore called "Super Chef." Merit apparently was obliged to change the name of its hamburger cooker from "Super Chef" to "Le Chef" when one of its customers, the Fingerhut Corporation, which had rights to the registered trademark "Super Chef," placed a large order with Merit and sought to use the "Super Chef" name on its own product. The first public use of the name "Le Chef" on the hamburger cooker was at the bian-

nual National Housewares Exposition in early July 1977. Production and shipment of the hamburger cooker took place in August 1977.

In February or March 1977, Merit began to consider the feasibility of marketing a food processor. The name "Le Chef" was chosen for the product and advertising began under that name on September 26, 1977 in a trade newspaper, *Retail Home Furnishing*. The first samples were shipped in October 1977.

Sunbeam apparently also considered a food processor an extremely marketable item and in January 1977 it selected the name "Le Chef" for that product. Trademark searches were obtained in February 1977, and no uses were disclosed, although Sunbeam's files indicate an awareness that "Le Chef" had been used by Roto Broil and a belief that it had been abandoned. Sunbeam's patent attorney testified that Sunbeam's technical trademark use of "Le Chef" began on July 7, 1977, although marketing presentations had been made prior to that time. On the July 7 date a presentation of Sunbeam's products, including its "Le Chef" food processor, was made to Sperry & Hutchinson, a trading stamp company, for inclusion in its S&H Green Stamps book. Additional food processors were shipped to that company on July 20, August 3 and September 2, 1977. In late August 1977, the "Le Chef" food processor was accepted by Sperry & Hutchinson for inclusion in its 1978 stamp book. Thereafter Sunbeam sought to register the trademark "Le Chef" by filing an application with the United States Patent Office. That application was preliminarily rejected on February 13, 1978, on the grounds that it too closely resembled a previously registered trademark "Lectra-Chef."[3]

It is well settled that a preliminary injunction will not issue absent a

---

1. Those attorneys were subsequently replaced by Michael Lacher, Esq., P.C.

2. In addition to the knife in question, Roto Broil manufactured rotisseries, deep fryers, blenders and can openers, none of which bore the "Le

Chef" name, but all of which are also serviced by defendant Merit.

3. The question of the validity of the words "Le Chef" as a trademark is not before me on this motion for a preliminary injunction.

showing of irreparable injury coupled either with a likelihood of success on the merits or a balance of the hardships tipping decidedly in favor of the movant and sufficiently serious questions going to the merits of the litigation to make them a fair ground for litigation. *Charlie's Girls, Inc. v. Revlon, Inc.,* 483 F.2d 953, 954 (2d Cir. 1973) (per curiam). It is an extreme remedy for which a compelling need must be demonstrated. *Societe Comptoir De L'Industrie v. Alexander's Department Stores, Inc.,* 299 F.2d 33, 35 (2d Cir. 1962).

■ Merit claims that it is entitled to such extraordinary relief because it has demonstrated irreparable injury and a likelihood of success on the merits. The irreparable injury allegedly involves the likelihood of confusion that will result should two "Le Chef" food processors of different origin be available to the public. It is true that "[c]onfusion as to source of origin is . . . the keystone to an action based upon [trademark infringement]." *Avon Shoe v. David Crystal, Inc.,* 279 F.2d 607, 612 (2d Cir. 1960). However, Merit cannot prevail on a preliminary injunction without showing priority of right over Sunbeam to use of the "Le Chef" name. *P. Daussa Corp. v. Sutton Cosmetics (P.R.) Inc.,* 462 F.2d 134 (2d Cir. 1972). Merit asserts that it has shown prior use of the "Le Chef" trademark dating back to Roto Broil's "Le Chef" knife in 1964. It is undisputed, however, that Roto Broil ceased production of this knife in 1971, a full four years before Merit acquired the Roto Broil Corporation. Merit itself never manufactured a "Le Chef" knife and, in fact, made no use of the "Le Chef" name until the middle of 1977 when its plans for its hamburger cooker and food processor began to crystalize.

■ Sunbeam claims that these years of nonuse evidence an abandonment of the "Le Chef" trademark, while Merit urges that the maintenance of tools and dies together with its service of Roto Broil products rebuts this claim. Of course, a finding of abandonment requires a showing of intent to abandon. *Proxite Products v. Bonnie Brite Products, Inc.,* 206 F.Supp. 511 (S.D.N.Y.1962). However, the fact that Merit has materials to service the Roto Broil products does not alone provide evidence of this intent nor does it seem sufficient to nurture the "Le Chef" trademark. *See generally Uncas Manufacturing Co. v. Clark & Coombs Co.,* 200 F.Supp. 831 (D.R.I.), aff'd, 309 F.2d 818 (1st Cir. 1962). Moreover, there has been no indication of any interest in the "Le Chef" name prior to Merit's introduction of its hamburger cooker and food processor in 1977. Merit's vague suggestion that it intends to resume production at some unspecified future date cannot be deemed a substitute for the clear showing of entitlement necessary to warrant the relief sought.[4] *See generally American Photographic Publishing Co. v. Ziff-Davis Publishing Co.,* 135 F.2d 569 (7th Cir. 1943).

Having found that Merit may not rely upon Roto Broil's prior use of "Le Chef" to support this preliminary injunction, I must now decide if Merit's 1977 applications of "Le Chef" to its hamburger cooker or food processors are prior to Sunbeam's so as to make it the senior user.

■ It appears that both companies conceived of the idea to market a "Le Chef" food processor at approximately the same time. It is use of the mark in commerce, however, that determines priority in a trademark case, *Maternally Yours, Inc. v. Your Maternity Shop, Inc.,* 234 F.2d 538 (2d Cir. 1956), and "the mere advertisement of a product does not constitute trademark use." *Modular Cinemas of America, Inc. v. Mini Cinemas Corp.,* 348 F.Supp. 578, 582 (S.D.N.Y.1972). The first use for trademark purposes is the date on which a mark is used in connection with an established business to identify the source of trade. *Maternally Yours, supra.* Sunbeam's first

---

4. This holding does not, of course, constitute a finding of abandonment on the merits of the underlying action. For purposes of the extraordinary relief sought on this motion, however, Merit has not sufficiently rebutted the inference of abandonment that arises from six years of non-use.

use of the "Le Chef" trademark was on July 7, 1977, the date on which the machine was transported from Chicago to New York in connection with a sales presentation which resulted in a later order. Since Merit did not begin to manufacture and ship its "Le Chef" hamburger grill until August 1977 and did not even advertise its food processor until late September 1977, it can hardly argue priority with regard to these appliances. Absent a showing of such priority, preliminary relief will not issue. *P. Daussa Corp. v. Sutton Cosmetics, supra.*

Accordingly, for failure to establish its priority of use, Merit's application for a preliminary injunction is denied.

IT IS SO ORDERED.